J-S43030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK COLLINS | : | |
| | : | |
| Appellant | : | No. 3090 EDA 2024 |

Appeal from the PCRA Order Entered November 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005027-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK COLLINS | : | |
| | : | |
| Appellant | : | No. 3091 EDA 2024 |

Appeal from the PCRA Order Entered November 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005028-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK COLLINS | : | |
| | : | |
| Appellant | : | No. 3092 EDA 2024 |

Appeal from the PCRA Order Entered November 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005885-2007

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 2, 2026**

Malik Collins appeals from the order dismissing his petition for relief under the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. He claims ineffective assistance of counsel. We affirm.

The Commonwealth charged Collins with murder, conspiracy, and other related charges for the murder of John Waller. **See** CP-51-CR-0005885-2007. It also filed separate charges for the attempted murder of Yusef Proctor and the attempted murder of Carl Odom. **See** CP-51-CR-0005027-2007 and CP-51-CR-0005028-2007. Collins filed a pretrial motion to suppress the identification of the shooter made by Carl Odom and his uncle, John Baker. At the suppression hearing, the Commonwealth offered into evidence an online printout with a photograph of Collins that Baker and Odom had been shown by family members. **See** N.T., 9/23/08, at 191, 212. The printout stated that Collins was wanted for murder in an unrelated case and provided a phone number to call if anyone knew his whereabouts. **See id.** at Commonwealth Exhibit CM-1. The Commonwealth also offered into evidence both witnesses' statements to police, where the witnesses stated that after seeing the online printout, they identified Collins as one of the shooters. **See id.** at CM-2 (Odom Statement) and CM-3 (Baker Statement). The court denied the motion and determined that there was no police misconduct regarding both witnesses' identification of Collins as the shooter. **See id.** at 236.

Collins proceeded with a jury trial. The trial court aptly summarized the evidence as follows:

Yusef Proctor testified that on the evening of June 15, 2006, he was on the porch of a home at [the] intersection of Chadwick and Wingohocking Streets in Philadelphia, along with John Waller, Carl [Odom], and Gia Norman. He further testified that two men came up, pulled guns out and began shooting. [Collins] was one of the shooters. Mr. Proctor ran down Chadwick Street carrying his seven month old son, with [Collins] following him. Mr. Proctor was struck in the back. He was able to return to the scene, [and] Proctor saw that both John Waller and Carl [Odom] had been shot. Mr. Waller, who later died from his injuries, was lying in the street and Mr. [Odom] was on the porch.

Police Officer Henry Schoch was on duty with his partner Officer Detreux on June 15, 2006. While on the 1600 block of Wingohocking Street, Officer Schoch heard at least fifteen gunshots in quick succession near 1700 Wingohocking Street. When Officer Schoch arrived at the intersection of Chadwick and Wingohocking, he saw a male (John Waller) [laying] on the sidewalk at the curb and another man (Carl [Odom]) laying on the front step of a house on Wingohocking. Shortly after, Yusef Proctor, who had been shot twice in the back, approached carrying an infant.

* * *

Detective Ronald Dove testified he interviewed Carl [Odom] on July 5, 2006. During the interview, Mr. [Odom] said ... [h]e heard gunshots and saw two boys shooting at him and the group he was with. After being shot in the leg, he saw one boy chase Yusef Proctor down Chadwick Street, still shooting. When the boy came back to Wingohocking Street, he began shooting at Mr. [Odom] again, hitting him in the ankle. Then the shooter stood over John Waller shooting at him, reloaded and continued shooting. Then the shooters ran up Chadwick Street.

Opinion of the Court, filed 7/8/09, at 3-4.

Relevant to this appeal, Odom testified that he could not identify the shooter. *See* N.T., Trial (Jury) Volume 1, 10/17/08, at 38-39. The

- 3 -

Commonwealth later impeached Odom with his statement to police. The impeachment went as follows:

> Q [Commonwealth]: Sir, before we took the break, I was asking you about a photograph that you had seen. Do you remember that?
>
> A [Odom]: Yes.
>
> Q: Okay. And how did you come to see that photograph?
>
> A: I think my uncle showed it to me.
>
> Q: Which uncle would that be?
>
> A: John.
>
> Q: Is that the same one that was on Winghocking during the shooting?
>
> A: Yes.
>
> Q: Okay. And let me ask you this: Did you see any of the individuals who shot at you?
>
> A: On the photo?
>
> Q: No. That night.
>
> A: No.
>
> Q: Okay. Would you recognize either of the individuals who shot at you?
>
> A: No.
>
> Q: Was there ever a time when you could recognize one of the individuals who shot at you?
>
> A: No.
>
> Q: Did you ever, upon – do you remember speaking with the detectives about the photograph that you had seen?
>
> A: Yes.
>
> Q: And what do you recall telling him?

A: They asked me how did I get the photograph - - oh, how did I see it. I told them. And I think they asked me was that the guy, and I told them no, and they told me it was, and I told them it wasn't, I can't recognize him, I never seen his face.

Q: So, you told the detectives that you did not see a face and you couldn't make an identification under any circumstances?

A: Right.

Q: Okay.

[Commonwealth]: Your Honor, could he be shown Commonwealth Exhibit C-38.

The Court: Yes, you may show him C-38.

The Crier: Your Honor, the witness has C-38.

[Commonwealth]: Okay. Showing you what's been marked as Commonwealth's Exhibit C-38, do you recognize that document?

A [Odom]: Yes.

Q: And from where do you recognize that document?

A: That's the picture I seen.

Q: When you say that's the picture you'd seen, what do you mean by that?

A: That's the picture that was shown to me.

Q: By whom?

A: By my uncle.

Q: Okay. And when you looked at that photograph of that individual, did you recognize that person?

A: No.

Q: Do you recall speaking with the detectives about whether or not you recognized the person based upon looking at that photograph?

A: No.

Q: Okay. If you'd take a look, again, at your statement.

The Court: That should still be right in front of you. That's C-44. Does he have C-44? It is still up there?

[Commonwealth]: I think he does.

The Crier: The statement is still up there.

The Court: So, it's the fourth page of C-44.

[Commonwealth]: It says, "Question," it's—

[Commonwealth]: Page 3, fourth question down.

[Defense Counsel]: What page?

The Court: Is it page three or page four.

[Commonwealth]: Page three, fourth question down.

[Commonwealth]: Do you have that there, Sir?

A [Odom]: Yes.

Q: "Question: After you saw this picture, what did you think? "Answer. I knew that he was one of the guys who shot us. The picture had his hair different. I could tell it was him by his face. His hair is shorter now. And he had a little bit of a beard on his chin." Did you give that answer to that question.

A: No.

Q: Now, the picture that you have in front of you, C-38, describe the photograph?

A: He got a bunch of hair.

Q: I'm sorry?

A: He has a bunch of hair, Afro.

Q: You described that that was the type of photograph that you saw to the police?

A: This is the photograph that was shown to me. That's all I said. I never described anything.

- 6 -

Q: Okay. And do you also recall, then, going, next question and answer: "Question: What did John say to you about the picture? "Answer"

[Defense Counsel]: Objection to what John --

The Court: That objection is sustained. That question and answer is sustained. Move to the next question, Counsel.

**Q [Commonwealth]: Next question and answer, it says, "Question: After you looked at the picture and made the determination that he was one of the shooters, did you come up with that from your observations or what John was saying? "Answer. I could tell he was one of the shooters by his face. It wasn't because John was saying so." Did you give that answer to that question?**

**A: No, Ma'am.**

Q: I didn't hear you.

A: No.

*Id.* at 76-82 (emphasis added).

Like Odom, Baker testified that he did not see the shooter. *Id.* at 208. The Commonwealth asked Baker about a portion of his statement to police the day of the shooting that stated:

Question: Can you describe the two males that walked up and started shooting?

Answer: All I seen was two males, black males, approximately in their early twenties, and one of them had a brown shirt on. That is it.

*Id.* at 209. Baker said, "That's not my answer. My answer was the boy that did the shooting had on a blue hat. That was my answer." *Id.* at 209-10.

Defense counsel then asked Baker, "You told the police at the station you didn't know who did the shooting, correct?" *Id.* at 212.[1] Baker agreed.

The jury found Collins guilty of first-degree murder, conspiracy, recklessly endangering another person ("REAP"), possession of instruments of crime ("PIC"), and carrying a firearm without a license, related to the murder of Waller.[2] The jury also found Collins guilty of attempted murder and aggravated assault related to victims Proctor and Odom.[3] The trial court sentenced Collins to life imprisonment without the possibility of parole for the murder conviction, concurrent terms of 10 to 20 years' incarceration for each count of attempted murder, five to 10 years' incarceration for each count of conspiracy, two and a half to five years' incarceration for firearms not to be carried without a license, and one to two years' incarceration for REAP and PIC. Collins only filed a notice of appeal for the docket related to the murder conviction. *See* Docket 5885. We affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal in 2011. *See Commonwealth v. Collins*, No. 3005 EDA 2009, 13 A.3d 988 (Table) (Pa.Super. filed September 21, 2010), *appeal denied*, 19 A.3d 1049 (Table) (Pa. filed March 30, 2011).

---

[1] Counsel explained that he was referencing Baker's testimony from September 23, 2008, the motion to suppress hearing, when asking the question. *See* N.T., Trial (Jury) Volume 1, 10/17/08, at 213.

[2] 18 Pa.C.S.A. §§ 2502(a), 903, 2705, 907, and 6106, respectively.

[3] 18 Pa.C.S.A. §§ 901(a) (of § 2502) and 2702(a)(1), respectively.

Collins filed his first PCRA petition in March 2011. The court appointed counsel who then filed an amended PCRA petition in May 2012. In January 2015, the court dismissed the petition without a notice of its intent to dismiss. Collins did not appeal. Subsequently, the PCRA court reinstated Collins's PCRA appellate rights. Collins appealed, and to remedy multiple procedural errors, this Court vacated the order dismissing the May 2012 PCRA petition and remanded for further proceedings. *See Commonwealth v. Collins*, No. 2258 EDA 2021, 2023 WL 9018317 (Pa.Super. filed Dec. 29, 2023).

On remand, Collins filed an amended petition alleging a single ineffectiveness claim. He maintained that the portion of Odom's statement that was read aloud at trial – "It wasn't because John was saying so" – was inadmissible hearsay and counsel should have objected. The court issued notice of its intent to dismiss the petition without a hearing. Collins did not respond, and the court dismissed the petition. This timely appeal followed.

Collins raises one issue: "Whether Defense Counsel was ineffective for failing to object to inadmissible hearsay that identified [Collins]?" Collins's Br. at vii (suggested answer omitted).

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Id.*

- 9 -

Here, Collins argues that the portion of Odom's statement read aloud to the jury was "obvious hearsay, failing to meet any exception." Collins's Br. at 9-10. He alleges that counsel was ineffective for failing to object. Collins contends that the statement was offered for its truth, namely that John Baker had identified Collins as one of the shooters. He argues that Baker's identification was unreliable and that the PCRA court erred in determining that the statement did not qualify as hearsay. Collins maintains that he suffered prejudice because the statement contradicted Baker's own in-court testimony and "improperly buttressed Odom's inconsistent statement." *Id.* at 15. Collins also maintains that Proctor's identification was unreliable and "cannot now serve as a sound basis for finding the admission of hearsay identification to be harmless error." *Id.* at 17. He points out that although Proctor made an in-court identification of Collins as the shooter, the trial court gave the jury a *Kloiber* instruction based on Proctor's preliminary hearing testimony, where he stated that he could not identify the race of the shooter.[4]

For its part, the Commonwealth alleges that the challenged statement was not offered for the truth of the matter asserted and therefore was not hearsay. It argues that the statement merely asserted "that Odom's identification was based on his own observation rather than external

_____

[4] ***Commonwealth v. Kloiber***, 106 A.2d 820, 826-27 (Pa. 1954) (stating that a court should caution the jury about identification testimony, "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions").

influence." Commonwealth's Br. at 8. It further argues that even if the statement could be considered hearsay, Collins did not sustain prejudice. It notes that both Proctor and Odom identified Collins as the shooter and gave consistent descriptions of the shooter. Additionally, the Commonwealth states that Collins's statements to officers after his arrest demonstrated his consciousness of guilt.

Counsel is presumed effective. *See Commonwealth v. Mojica*, 242 A.3d 949, 955 (Pa.Super. 2020). To overcome this presumption, a petitioner must plead and prove "that (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for the action or inaction; and (3) the petitioner suffered prejudice as a result." *Commonwealth v. Diaz*, 226 A.3d 995, 1007 (Pa. 2020). Prejudice occurs where "there is a reasonable probability that the result of the proceeding would have been different." *Commonwealth v. Pitt*, 313 A.3d 287, 293 (Pa.Super. 2024) (citation omitted). The failure to prove any prong results in the failure of the claim. *See id.*

Hearsay is a statement that is made outside of a current trial or hearing and offered into evidence for the truth of the matter asserted in the statement. *See* Pa.R.E. 801(c). A statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." *Id.* at 801(a). Hearsay is not admissible unless an exception applies. *See id.* at 802, 803.

Here, the contested statement, "It wasn't because John [Baker] was saying so," is not hearsay. The words do not convey Baker's oral, written, or

- 11 -

nonverbal assertion. As such, it is not hearsay. The ineffectiveness claim fails because the underlying hearsay objection lacks arguable merit.

Moreover, even if the contested statement were hearsay, we would reject Collins's ineffectiveness claim for lack of prejudice due to the overwhelming evidence of Collins's guilt. In this case, there was evidence of both shooting victims' identification of Collins as the shooter. One victim, Proctor, made an in-court identification. Although Collins claims this identification was unreliable, credibility was for the jury. *See Commonwealth v. Mikitiuk*, 213 A.3d 290, 300-01 (Pa.Super. 2019). It was free to believe all, part, or none of the testimony, including Proctor's in-court identification of Collins as the shooter. *See* N.T., Trial (Jury) Volume 1, 10/16/08, at 120; *Makitiuk*, 213 A.3d at 300-01.

Although the other victim, Odom, did not make an in-court identification, the Commonwealth admitted as substantive evidence Odom's statement in which he had identified Collins as the perpetrator. *See* N.T., Trial (Jury) Volume 3, 10/21/08, at 130; Commonwealth Exhibit 44. Odom stated that after seeing a photograph of Collins from his uncle John Baker, Odom "knew that he was one of the guys who shot us. The picture had his hair different, I could tell it was him by his face. His hair is shorter now and he had a little bit of a beard on his chin." Odom Statement at 3; *see* N.T., Trial (Jury) Volume 1, 10/17/08, at 239-242.

The Commonwealth also presented evidence of Collins's consciousness of guilt based on his conduct and statements to an officer following his arrest.

An officer testified that after placing Collins under arrest, Collins told the officer he "would be getting a bonus" and "would know who he is after he was fingerprinted." N.T., Trial (Jury) Volume 2, 10/20/08, at 19. He also told the officer, "I should have blasted you when I had the chance. I went out like a sucker for $200." *Id.* at 20. Furthermore, a detective testified about difficulties over five months in finding and arresting Collins after the murder. *See id.* at 79-95. His evasion of police was further evidence of consciousness of guilt. Considering all the above, Collins has failed to establish that there is a reasonable probability that if the contested statement had not been admitted into evidence the outcome of his case would have been different. As such, we agree with the PCRA court that, even if the statement were hearsay, Collins cannot establish prejudice.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/2/2026